FILED
2024 Aug-06  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**CATRELA PERKINS,**
*Individually and as administrator of the Estate of Stephen Clay Perkins, deceased,* **et al.,**
      Plaintiffs,

**v.**

**CITY OF DECATUR, ALABAMA,**
**et al.,**
      Defendants.

**Case No. 5:23-cv-1685-CLM**

### MEMORANDUM OPINION

Decatur police officer Bailey Marquette shot and killed Stephen Clay Perkins in his front yard as a towing company tried to repossess Perkins' truck. Perkins' widow, Catrela, and child, A.P., sue many individuals and entities they claim contributed to Perkins' death. Many defendants move to dismiss Perkins' claims:

- *The shooting officer*: Bailey Marquette (doc. 45);
- *The non-shooting officers*: Christopher Mukkadam, Joey Williams, and Vance Summers (doc. 15);
- *The towing company defendants*: Allstar Recovery, LLC, Richie Brady, and Caleb Combs (doc. 17); and,
- *The City of Decatur* (doc. 18).

The towing company defendants and the truck's creditor (Pentagon Federal Credit Union) also move to compel arbitration. (Docs. 52, 68, 73). The court will rule on the arbitration motions in a future order and will not address the towing company defendants' motion to dismiss before ruling on arbitration in case the court agrees that their claims must be arbitrated.

That leaves the motions filed by the City and the officers. For the reasons explained within, the court **GRANTS IN PART AND DENIES IN PART** Marquette's motion and **GRANTS** the City's and non-shooting officers'

motions. The court will dismiss those counts *without* prejudice, meaning the court will give Perkins one chance to replead her claims—after the court rules on the remaining motions to compel arbitration and motion to dismiss.

## BACKGROUND

Because the defendants seek to dismiss Perkins' case under Rule 12, the court states the facts as Perkins pleads them in her Complaint and assumes all of her alleged facts are true. *See* FED. R. CIV. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### A. The repossession and shooting

Pentagon Federal Credit Union collects debts. Pentagon hired Allstar Recovery to repossess Stephen Perkins' truck.

Combs works for Allstar Recovery. On September 29, 2023, Combs alone drove to Perkins house in Decatur to repossess Perkins' truck. Perkins was home, and he objected to Combs taking his truck.

So Combs left to get reinforcements. He returned with Brady, a fellow Allstar Recovery employee, and four Decatur police officers: Marquette, Mukkadam, Summers, and Williams. Rather than tell Perkins that they were present, the four officers hid around Perkins' house as Combs and Brady tried to tow Perkins' truck.

Perkins came out of his house to confront Combs. Perkins again objected to Combs taking his truck. Officer Marquette then identified himself as a police officer and ordered Perkins to the ground. Officer Marquette then shot Perkins multiple times before giving Perkins a chance to comply. The shots killed Perkins.

### B. The lawsuit

Perkins' wife and child sued the four officers, the two tow truck drivers, the City, Allstar Recovery, and Pentagon Federal. Perkins' complaint pleads eight counts. Counts 4, 7, and 8 plead claims against Pentagon Federal, Allstar, and the Allstar employees, so the court does not address them here thanks to the motions to compel arbitration. Counts 1-3 and 5-6 are pleaded against the City and the four officers. The court addresses the pending motions to dismiss these five counts in the Discussion section.

### STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but does demand more than "an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

Rule 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A complaint states a facially plausible claim for relief when the plaintiff pleads facts that permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

### DISCUSSION

The court addresses the five counts against the City and four officers in the order Perkins pleaded them.

### Count I:    Section 1983 (Officer Marquette)

The Fourth Amendment protects citizens from "unreasonable searches and seizures," including excessive use of force by law enforcement. U.S. Const. amend. IV. Section 1983 allows a person to seek remedies for a violation of this and other Constitutional rights.

In Count I, Perkins alleges that Officer Marquette used excessive force when he shot her husband outside their home and § 1983 provides the remedy. Marquette responds in three ways. First, he claims qualified immunity, which offers complete protection for government officials if they haven't violated a clearly established constitutional right. *See Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Second, if he is not immune, Marquette says that he can be sued only by Mr. Perkins' estate—not by his wife and child personally. Third, Marquette argues that the estate's claim is limited to punitive damages based on the borrowing of Alabama law that contains that limitation. The court addresses each contention below.

1. <u>Qualified immunity</u>: The court applies a two-part test for qualified immunity. First, the officer must show "that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). If the officer meets this first burden, then the plaintiff must show that the officer violated a constitutional right that was clearly established at the time of the wrongful act. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

In her complaint, Perkins alleges that Marquette was "at all times relevant . . . acting within the scope of said agency, service, and/or employment" with the City of Decatur. (Doc. 1, ¶ 4). And Perkins does not contest Marquette's assertion that he was acting within the scope of his duties as a police officer when he shot her husband. So the court finds that Marquette has met his burden in this first step.

The court finds that Perkins also meets her burden in the second step. It was clearly established at the time of Mr. Perkins' death that an officer cannot use deadly force unless the officer (1) has probable cause to believe that the person poses a threat of serious physical harm, either to the officer or to others; (2) reasonably believes that the use of deadly force is necessary to prevent escape; and, (3) gave some warning about the possible use of deadly force, if feasible. *Vaughan v. Cox*, 343 F.3d 1323, 1329-30 (11th Cir. 2003). In relevant part, Perkins pleads these facts about the shooting:

> 25. At no time did Stephen Clay Perkins pose a threat of death or great bodily harm to Defendants Caleb Combs, Richie Brady, Bailey Marquette, Christopher Mukkadam, Joey Williams, or Vance Summers, or any other person present.
>
> 26. After Stephen Clay Perkins objected to Combs and/or Brady's repossession, Defendant Bailey Marquette identified himself as a police officer and ordered Plaintiffs decedent to the ground.
>
> 27. Giving Stephen Clay Perkins no time to respond to his verbal commands, Defendant Bailey Marquette fired multiple gunshots which struck Plaintiffs decedent.

(Doc. 1, ¶¶ 25-27). Assuming these facts are true, Officer Marquette would not be entitled to qualified immunity because, when Marquette used deadly force,

Perkins was neither trying to leave the scene nor posing a serious threat of physical harm to others. Nor did Marquette warn Perkins that he might use deadly force before he shot him.

Marquette responds by saying there are "obvious holes" in Perkins' factual narrative, calling it "so one-sided as to be purely conclusory rather than factual." (Doc. 46 at 8). While Marquette may provide more context after discovery, at this stage, the court is bound to Perkins' factual recitation. And while the narrative may be one-sided, Perkins pleads enough facts to establish that Marquette knew that he was violating Perkins' clearly established legal right against excessive force when he shot him. So the court will deny Marquette's claim of qualified immunity on Count I.

2. <u>Estate-only claim</u>: Marquette argues that Alabama law allows only the "personal representative" of Perkins' estate to raise a § 1983 claim on his behalf. Ala. Code § 6-5-410(a). Perkins agrees and asks the court for permission to replead the complaint to match the parties' agreement. So the court will grant Marquette's motion to dismiss Count I to the extent that it was brought by Catrela Perkins and A.P. in their individual capacities.

3. <u>Punitives-only claim</u>: Marquette argues that because Alabama law limits the estate's recovery to punitive damages, only punitive damages are available to the estate under § 1983. Perkins points to district court precedent saying that compensatory damages are available. (Doc. 58 at 8) (citing *Robinson v. City of Hueytown*, 2015 U.S. Dist. Lexis 132417 (N.D. Ala. Sept. 30, 2015)). And the parties agree that the Eleventh Circuit has yet to squarely answer the question. *See Gilmere v. City of Atlanta*, 864 F.2d 734, 739 n.7 (11th Cir. 1989) (indicating that borrowing Alabama law to limit § 1983 relief to punitive damages would violate 42 U.S.C. § 1988(a)).

The court needn't—and thus doesn't—answer this question at the Rule 12 stage. As explained, the court holds that the personal representative of the estate has pleaded a claim upon which relief can be granted under Rule 12(b)(6), and the individual plaintiffs (Catrela Perkins and A.P.) have not. The court reserves a ruling on the *scope* of the relief for future motions. Mrs. Perkins, as the estate's personal representative, may thus plead multiple forms of relief in her amended complaint, and Marquette may to object to the forms of relief he believes are precluded.

—

To sum up, Catrela Perkins, in her role as the personal representative of her husbands' estate, has pleaded a claim that could entitle the estate to relief. But Mrs. Perkins and her daughter A.P. fail to state a claim that would entitle them to relief. So the court will **grant** Marquette's motion to dismiss Count I as to the individual plaintiffs.

### Count II:   Section 1983 (Non-shooting officers)

Perkins next alleges a § 1983 claim against the remaining officers at the scene, Mukkadam, Williams, and Summers. The non-shooting officers claim qualified immunity. Everyone agrees that these officers were acting within the scope of their discretionary authority when Perkins was shot, so the only question is whether Perkins can show that the non-shooting officers violated a constitutional right that was clearly established at the time of the shooting. *Irvin*, 496 F.3d at 1199.

1. <u>The law</u>: When Marquette shot Perkins, it was clearly established that the Fourth Amendment required officers "to intervene in the use of excessive force when they have the ability to intervene." *Helm v. Rainbow City, Ala.,* 989 F.3d 1265, 1278 (11th Cir. 2021) (noting this right was clearly established as far back as February 1994). Having found in Count I that Marquette used excessive force (at least as pleaded), the court must now decide whether Perkins pleads facts that would prove the non-shooting officers could have intervened but didn't. *See Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) ("Whether the officer had time to intervene is a relevant consideration.").

2. <u>Discussion</u>: Perkins pleads the events like this:

> 21. On September 29, 2023, Defendants, Marquette, Combs, and Brady went to Decedent's home.
>
> 22. When Defendants, Marquette, Combs, and Brady arrived at Decedent's home, they did not announce their presence or office. Rather, Defendants and Marquette concealed themselves around Decedent's home.

23. At that time, Combs and/or Brady attempted to attach their tow truck to Decedent's vehicle. At this time, Combs and Brady knew or should have known they lacked legal authority to repossess Decedent's vehicle.

24. Subsequently, Decedent exited his home and confronted Combs and/or Brady and objected to the repossession attempt.

25. At no time did Decedent pose a threat of death or great bodily harm to Defendants, Marquette, Combs, and Brady, or any other person present.

26. After Decedent objected to Combs and/or Brady's repossession, Marquette identified himself as a police officer and ordered Decedent to the ground.

27. Giving Decedent no time to respond to his verbal commands, Marquette fired multiple gunshots which struck Plaintiffs decedent.

28. As a direct and proximate result of the gunshots fired by Marquette, Decedent died.

(Doc. 1, ¶¶ 21-28 (cleaned up)). Perkins adds the following in Count II:

36. At all times relevant, Defendants acted under color of state law.

37. At all times relevant, Defendants had a duty to prevent Marquette from inflicting unlawful and unconstitutional deadly harm to Decedent.

38. Notwithstanding said duty, Defendants failed to stop the unprovoked and unjustified use of excessive and deadly force against Decedent by Marquette.

39. The conduct of Defendants was done intentionally and willfully and exhibited a flagrant disregard for Decedent's federally secured constitutional rights and deprived Decedent of his rights in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

> 40. As a direct and proximate result of the unconstitutional and unreasonable conduct of Defendants, Decedent died.

(Doc. 1, ¶¶ 36-40 (cleaned up)).

Even if you consider these facts in a light most favorable to Perkins, the facts do not show that the non-shooting officers had the chance to intervene once they knew Marquette might use excessive or deadly force. Perkins does not plead that the officers discussed shooting Perkins before they took positions hiding around the house. Perkins does not plead that the non-shooting officers came out before the shooting. Perkins does not plead that any of the officers heard Marquette's warning or saw him draw his gun. Most importantly, Perkins pleads that no one had time to react:

> 26. After Decedent objected to Combs and/or Brady's repossession, Marquette identified himself as a police officer and ordered Decedent to the ground.
>
> 27. Giving Decedent no time to respond to his verbal commands, Marquette fired multiple gunshots which struck Plaintiffs decedent.

(Doc. 1, ¶¶ 26-27 (highlight added)). If Perkins did not have time to respond to Marquette's verbal commands before Marquette shot him, then neither did the other officers. And if the non-shooting officers had no opportunity to intervene, they are entitled to qualified immunity. *See Irvin*, 496 F.3d at 1199.

The court will thus **grant** the non-shooting officers' motion to dismiss Count II based on qualified immunity. The dismissal will be *without* prejudice to give Perkins one opportunity to plead facts that would establish that one or more of the non-shooting officers had the opportunity to intervene but did not.

**Count III: Section 1983 (City of Decatur)**

Perkins next pleads a § 1983 claim against the City of Decatur, for whom the four officers were on duty at the time of the shooting.

1. <u>The law</u>: Municipalities are only liable for their employees' acts under § 1983 if the employee was executing an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). That means, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were

violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The court found in Count 1 that Perkins pleads enough facts to prove a constitutional right was violated. So to make the City liable under § 1983, Mrs. Perkins must also plead facts that would show the City had a custom or policy that was deliberately indifferent to Mr. Perkins' right against excessive force *and* that policy caused Marquette to shoot Perkins.

2. <u>Discussion</u>: Perkins pleads the following custom or policy in her statement of the facts:

> 10. On and prior to September 29,2023, Defendant City of Decatur, Alabama employed a policy, procedure, or custom, of assessing Decatur police officers' performance. The results of this assessment were used by Defendant City of Decatur, Alabama, in various employment decisions related to its police officers, including pay, promotion, and assignment decisions.
>
> 1l. Under this policy, practice, or custom, particular police actions of each officer, including issuing tickets and making arrests, were recorded and assigned numerical values. Under this system, less invasive citizen interactions, such as issuing a citizen a ticket, were assigned a lower value than more invasive citizen interactions, such as arresting the citizen.
>
> 12. Under this policy, practice, or custom, the police officers who engaged in more invasive citizen interactions were given preference in pay, promotion, and assignment decisions, to those officers who engaged in less invasive citizen interactions.
>
> 13. The effect of Defendant City of Decatur, Alabama's policy, practice, or custom, was to encourage their police officers to escalate officers' use of force during citizen interactions. A further effect of this policy, procedure, or custom was to promote the use of excessive and unconstitutional force against citizens during arrests and other citizen interactions.

14. The stated policy of Defendant City of Decatur, Alabama's police department is to use de-escalation techniques during citizen interactions.

15. On September 29, 2023, Defendants Marquette, Mukkadam, Williams, and Summers were acting pursuant to the above-mentioned policy, practice, or custom of Defendant City of Decatur, Alabama.

(Doc. 1, ¶¶ 10-15) (cleaned up). Mrs. Perkins then—in a conclusory manner—pleads in Count III that Perkins' death resulted from this policy:

42. The policy, procedure, or custom described in paragraphs l0-14, supra, was a widespread practice that was permanent and well-settled so as to constitute a custom and usage of Defendant City of Decatur, Alabama so as to have the force of law.

43. Defendant City of Decatur, Alabama had actual and/or constructive knowledge of the practice yet did nothing to end the practice.

44. As a direct and proximate result of the unconstitutional policy of Defendant City of Decatur, Alabama, Stephen Clay Perkins was deprived of his federally secured constitutional rights in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

45. As a direct and proximate result of the unconstitutional policy of Defendant City of Decatur, Alabama, Stephen Clay Perkins died.

(Doc. 1, ¶¶ 42-45) (cleaned up).

The parties disagree whether the policy described in Paragraphs 10-14, if proved true, would constitute deliberate indifference to the constitutional right against excessive force. But the court needn't resolve that debate because, even if Perkins is right, Perkins pleads no facts that would prove Officer Marquette shot Perkins because of the pleaded policy.

According to Perkins, Decatur officers are supposed to use "de-escalation techniques" when dealing with citizens (*Id.*, ¶ 14), but are rewarded with extra

points toward pay and promotions if they instead use more invasive techniques—for example, arrest rather than a ticket (*Id.*, ¶¶ 11-13).

But Perkins pleads no facts that links the 'extra point' reward to Marquette's actions. Perkins does not plead that using deadly force rewards extra points, rather than demerits. Perkins does not plead that the City knew that its point system led to other officers using deadly force before Marquette shot Perkins. Perkins does not plead that the City has ever awarded an officer extra points for using deadly force, thus providing the incentive to escalate citizen interactions to a lethal level. Perkins does not plead that Marquette pulled the trigger because he wanted extra points for escalating the situation— or even *thought* about the policy before acting.

In short, Perkins pleads no facts that would link Decatur's (alleged) extra-points policy to Marquette shooting Perkins. The court will thus **grant** the City's motion to dismiss Count III for failure to state a claim that entitles Perkins to relief. This dismissal will be without prejudice, meaning that the court will give Perkins one chance to amend her complaint to sufficiently allege both that the City's policy constituted deliberate indifference *and* that policy caused Perkins' death.

### Count V: Wrongful Death (Officer Marquette)

In Count V, Perkins sues Marquette and the City of Decatur for wrongful death under Ala. Code. § 6-5-410. For the same reasons discussed in Count 1, the court finds that only Mrs. Perkins, as personal representative of her husband's estate, can raise a claim under Alabama's wrongful death statute. And the court will separate its discussion of each Defendant's motion to dismiss Count V, starting with Officer Marquette.

1. <u>Immunity</u>: Marquette pleads two types of immunity: (a) state-agent immunity, as defined by state common law, and (b) peace officer immunity, under Ala. Code § 6-5-338(a). Recently, the Alabama Supreme Court affirmed that the same test governs both types of immunity: "The restatement of State-agent immunity as set out by this Court in *Ex parte Cranman* ... governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)." *Ex parte City of Montgomery*, 2024 WL 1685063, at * 3 (Ala. Apr. 19, 2024) (quoting *Ex parte City of Montgomery*, 272 So. 3d 155, 160 (Ala. 2018),

and referencing *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)). The test has two parts. First, the officer has the burden of proving that he (1) was a peace officer, (2) performing his law-enforcement duties at the time of the incident, and (3) exercising judgment and discretion. *Montgomery,* 2024 WL 1685063, at *3 (citing *Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017)). The facts pleaded in Perkins' complaint undisputedly satisfy these elements, so Marquette meets his burden.

Second, the burden shifts to Perkins to prove at least one of the two "*Cranman* exceptions":

> In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Montgomery,* 2024 WL 1685063, at * 3 (quoting *Montgomery*, 272 So. 3d at 160)). The court applies this standard below and reaches a different conclusion based on the particular allegation in Count V—*i.e.*, failure to announce versus excessive force/shooting.

2. Announcement-related claim: Perkins starts Count V by alleging that Marquette's failure to announce his presence when he arrive at Perkins' house proximately caused Perkins' death:

> 55. Notwithstanding said duty, Defendants City of Decatur, Alabama, by and through its authorized agent, servant, and/or employee Bailey Marquette, committed one or more of the following neglectful, careless, and/or unskillful acts and/or omissions

> (a) Neglectfully, carelessly, and unskillfully failed to announce his office when he arrived at Plaintiff s decedent's home . . .
>
> 56. As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Stephen Clay Perkins died.

(Doc. 1, ¶¶ 55-56) (cleaned up). Marquette is immune from liability for this claim because Perkins can meet neither *Cranman* exception.

First, Perkins does not point to any federal case or statute that requires a law enforcement official to announce his presence when arriving at a home to monitor a repossession. So the court finds that no federal law, rule, or regulation requires stripping Marquette of his state-law immunity.

Second, Perkins alleges that Marquette acted "neglectfully, careless, and unskillfully" (¶ 55(a)) and within the scope of his employment (¶ 53) when he failed to announce. Perkins thus fails to plead facts that would show that Marquette instead acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Montgomery,* 2024 WL 1685063, at * 3

Because Marquette meets his burden of proving that he was a peace officer acting within the scope of his duty, and Perkins fails to meet either *Cranman* exception, Marquette is immune from state-law liability for wrongful death based on his failure to announce. So the court will **grant** Marquette's motion to dismiss the claim pleaded in ¶ 55(a) *without* prejudice, thus giving Perkins one chance to re-plead the claim to address this deficiency.

3. Shooting-related claim: The rest of Perkins' allegation focuses on the events surrounding Marquette shooting Perkins:

> 55. Notwithstanding said duty, Defendants City of Decatur, Alabama, by and through its authorized agent, servant, and/or employee Bailey Marquette, committed one or more of the following neglectful, careless, and/or unskillful acts and/or omissions . . .
>
> (b) Negligently, carelessly, and unskillfully failed to de-escalate the citizen interaction with Stephen Clay Perkins when Defendant

knew or should have known Perkins did not present a threat of injury to himself or others;

(c) Negligently, carelessly, and unskillfully failed to allow Stephen Clay Perkins an opportunity to respond to Defendant's verbal commands prior to discharging his firearm at Plaintiff's decedent;

(d) Neglectfully, carelessly, and unskillfully discharged his firearm at Stephen Clay Perkins when Perkins did not pose a threat of death or serious bodily injury to others; and

(e) Negligently, carelessly, and unskillfully failed to warn Stephen Clay Perkins that he intended to use deadly force prior to discharging his firearm at Perkins.

56. As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Stephen Clay Perkins died.

(Doc. 1, ¶¶ 55-56) (cleaned up). Perkins meets the first *Cranman* exception for these allegations. In Count 1, the court found that Marquette may have violated Perkins' constitutional rights if Perkins can prove that Marquette used lethal force even though Marquette had not warned Perkins that he might use deadly force; Perkins was not trying to leave the scene; and Perkins was not posing a serious threat of physical harm to others. Because state-agent immunity does not apply if the state agent violated a federal constitutional right under the first *Cranman* exception, Marquette is not entitled to state-agent or peace officer immunity on Count V. *See Taylor v. Hughes*, 920 F.3d 729, 734-35 (11th Cir. 2019) ("state-agent immunity do[es] not immunize the guards from liability under state law if they violated Almus's constitutional rights"); *Ex parte Rizk*, 791 So. 2d 911, 913-14 (Ala. 2000) (state-agent immunity doesn't apply "when the Constitution or laws of the United States … require otherwise").

4. Punitives-only claim: Like Count 1, Marquette argues that the estate's wrongful death claim is limited to punitive damages. Unlike Count 1, however, Perkins agrees. (Doc. 58 at 8, n.3). So the court will limit any recovery against Marquette under Count V to punitive damages.

**Count V:  Wrongful Death (City of Decatur)**

Perkins alleges that the City is also liable to pay punitive damages for Marquette's actions. The City claims state-law immunity from two statutory sources: (1) Ala. Code § 6-5-338(b) and (2) Ala. Code § 11-47-190. The court considers each below. Combined, these statutes immunize the City from state-law liability under Count V.

1. <u>Section 6-5-338(b) & Failure-to-announce claim</u>: As discussed, Section 6-5-338(a) grants immunity to peace officers who act within the line and scope of their duties. The next provision, § 6-5-338(b), extends that immunity to "governmental units or agencies authorized to appoint peace officers." This creates a simple rule: If the peace officer gets immunity under subsection (a), then his governmental employer gets vicarious immunity under subsection (b). If the officer doesn't get immunity, then neither does his employer (at least under this statute). *See City of Bayou La Batre v. Robinson*, 785 So.2d 1128, 1131 (Ala.2000); *Ex parte City of Gadsden,* 781 So.2d 936, 940 (Ala.2000); *Borders v. City of Huntsville*, 875 So.2d 1168, 1183 (Ala. 2003).

As discussed in the previous section, Section 6-5-338(a) immunizes Officer Marquette from wrongful-death liability for his alleged failure to announce. Section 6-5-338(b) thus immunizes the City from liability stemming from the same allegation.

The court found, however, that Section 6-5-338(a) does not immunize Marquette from liability stemming from his use of lethal force. That means Section 6-5-338(b) cannot immunize the City from liability for acts stemming from the same allegation. *See Borders*, *supra* (denying city's claim of immunity because the officer was not entitled to immunity). The court thus turns to § 11-47-190.

2. <u>Section 11-47-190 & Shooting-related claim</u>: Section 11-47-190 states that "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality[.]" Section 11-47-190 thus gives cities immunity when their employees act intentionally and withholds it when they act negligently—*i.e.*, with "neglect, carelessness, or unskillfulness." *See*, *e.g.*,

*Franklin v. City of Huntsville*, 670 So.2d 848, 850 (Ala.1995) ("Section 11–47–190 provides for an action against a municipality for the 'neglect, carelessness or unskillfulness' of its agents, not for their intentional torts"); *Ex parte City of Gadsden*, 718 So.2d 716, 721 (Ala.1998) ("Section 11–47–190 ... absolves a city from liability for an intentional tort committed by one of its agents"); *see also Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010) ("In sum, under § 11–47–190, a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees.").

The court finds that, if you assume the facts Perkins pleads are true, then the City is entitled to immunity under § 11-47-190 because Marquette didn't shoot Perkins out of "neglect, carelessness, or unskillfulness," he *intentionally* shot Perkins. The Eleventh Circuit's opinion in *Brown* illustrates this distinction.

Plaintiff Brown was sitting in a parked car in a Wal-Mart parking lot when officers approached her for playing her music too loud. Brown and one of the officers (Officer Norris) got into a verbal disagreement. Brown then tried to get out of the car; Brown says because Norris told her to, while Norris said she was trying to flee. Norris then pepper sprayed Brown in the face and took her to the ground. While Brown alternatively pleaded that Norris acted negligently or willfully, *Brown*, 608 F.3d at 743, n.27, the Eleventh Circuit found that "all of Brown's evidence indicated that Norris's use of pepper spray and other force against her was intentional, as opposed to neglectful or careless." *Id.* at 743. The court added: "The factual issues in this case are not over whether Norris's acts were intentional, but over what Brown did or did not do before Norris acted, the extent of force Norris used, and whether Brown's actions justified Norris's use of force in response." *Id.* Because Officer Norris acted intentionally—not negligently—the Circuit Court affirmed the district court's granting of immunity under § 11-47-190.

The same is true here. Perkins pleads in Count V that Marquette acted "negligently, carelessly, and unskillfully" in an attempt to defeat the City's immunity claim. (Doc. 1, ¶ 55). But that pleading is conclusory and is refuted by the facts Perkins pleads in her statement of facts:

> 21. On September 29, 2023, Defendants, Marquette, Combs, and Brady went to Decedent's home.

22. When Defendants, Marquette, Combs, and Brady arrived at Decedent's home, they did not announce their presence or office. Rather, Defendants and Marquette concealed themselves around Decedent's home.

23. At that time, Combs and/or Brady attempted to attach their tow truck to Decedent's vehicle. At this time, Combs and Brady knew or should have known they lacked legal authority to repossess Decedent's vehicle.

24. Subsequently, Decedent exited his home and confronted Combs and/or Brady and objected to the repossession attempt.

25. At no time did Decedent pose a threat of death or great bodily harm to Defendants, Marquette, Combs, and Brady, or any other person present.

26. After Decedent objected to Combs and/or Brady's repossession, Marquette identified himself as a police officer and ordered Decedent to the ground.

27. Giving Decedent no time to respond to his verbal commands, Marquette fired multiple gunshots which struck Plaintiffs decedent.

28. As a direct and proximate result of the gunshots fired by Marquette, Decedent died.

(Doc. 1, ¶¶ 21-28 (cleaned up)). These facts, if assumed true, show that Marquette intentionally ordered Perkins to the ground, then intentionally shot Perkins before he could comply. Marquette didn't act out of negligence or mistake. Perkins even says so when pleading her count against Marquette:

33. The conduct of Defendant Bailey Marquette ==was done intentionally and willfully==, and exhibited a flagrant disregard for Stephen Clay Perkins' federally secured constitutional rights and deprived Stephen Clay Perkins of his rights in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

(Doc. 1, ¶ 33) (cleaned up, highlight added).

Like *Brown*, the fact questions here will center on excessive force and justification, not intent. Just like Officer Norris intentionally sprayed Brown with pepper spray, Officer Marquette intentionally shot Perkins with his firearm. And because Marquette's intent is clear from the face of the complaint, the City is entitled to immunity under Ala. Code § 11-47-190.

—

To sum up, the court will **grant** the City's motion to dismiss Count V. While the court doubts that Perkins can replead the facts in a way that transforms the shooting from intentional to negligent, especially without impacting the viability of her other claims, the court will make the dismissal *without* prejudice to give Perkins one chance to amend her shooting-related allegations—mindful of her obligations under Rule 11.

### Count VI: Wrongful Death (Non-shooting officers)

Perkins alleges that the three non-shooting officers are also liable under Alabama's wrongful death statute.[1] The officers argue (a) that they are immune under state law and (b) Perkins fails to state a claim that entitles her to relief. The court addresses both arguments below.

1. <u>Immunity</u>: The non-shooting officers claim the same two types of immunity that Marquette claimed: state-agent immunity and peace officer immunity, under Ala. Code § 6-5-338(a). As explained, the test for both immunity types is the same.

First, each officer has the burden of proving that he (1) was a peace officer, (2) performing his law-enforcement duties at the time of the incident, and (3) exercising judgment and discretion. *Montgomery,* 2024 WL 1685063, at *3 (citing *Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017)). The facts pleaded in Perkins' complaint satisfy these elements for each officer, *see* (doc. 1, ¶ 60), so each non-shooting officer meets his burden.

Second, the burden shifts to Perkins to prove at least one of the two "*Cranman* exceptions":

---

[1] For the reasons already stated, this claim can be raised only by the personal representative of Perkins' estate and is limited to punitive damages.

> In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Montgomery,* 2024 WL 1685063, at * 3 (quoting *Montgomery*, 272 So. 3d at 160). The court found in Count II that Perkins fails to adequately plead that the non-shooting officers violated a clearly established federal right. So Perkins cannot meet her burden of establishing the first *Cranman* exception.

Perkins must therefore plead facts that would show the individual non-shooting officers "act[ed] willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Montgomery,* 2024 WL 1685063, at * 3. But in Count VI, Perkins pleads that the non-shooting officers acted "negligently, carelessly, and unskillfully," not willfully or maliciously:

> 62. Notwithstanding said duty, the City of Decatur, Alabama, by and through its authorized agents, servants, and/or employees, Defendants, committed one or more of the following neglectful, careless, and/or unskillful acts and/or omissions:
>
> (a)  Neglectfully, carelessly, and unskillfully failed to announce their office when they arrived at Decedent's home;
>
> (b)  Negligently, carelessly, and unskillfully failed to de-escalate the citizen interaction with Decedent when Defendants knew or should have known Decedent did not present a threat of injury to himself or others;
>
> (c) Negligently, carelessly, and unskillfully failed to prevent Marquette from discharging his firearm at Decedent when

Decedent did not pose a threat of death or serious bodily injury to others; and

(d) Negligently, carelessly, and unskillfully failed to warn Decedent that Marquette intended to use deadly force against Decedent when Decedent did not pose a threat of death or serious bodily injury to others.

63. As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Decedent died.

(Doc. 1, ¶ 62-63). If you take Perkins' conclusory allegations as true, Perkins essentially admits the non-shooting officers are entitled to state-law immunity. Further, as pleaded, the facts would not establish that the non-shooting officers *could* have willfully, maliciously, fraudulently, or in bad faith failed to (a) de-escalate the situation between Perkins and Marquette, (b) prevent Marquette from firing his weapon, or (c) warn Perkins that Marquette was about to shoot him. As explained, Perkins fails to plead what the non-shooting officers were doing, or where they were, when Marquette shot Perkins. And Perkins affirmatively pleads facts that would show the non-shooting officers had no time to intervene or warn Perkins.

The only allegation Perkins pleads that *might* have been intentional or willful was the officers' failure to announce their presence to Perkins when they arrived at his home. But again, Perkins pleads that the officers did this negligently and carelessly, not willfully or maliciously. *See* (Doc. 1, ¶ 62(a)). Plus, as discussed below, Perkins fails to plead facts that show the officers' failure to announce their presence proximately caused Perkins' death. So the court finds that Perkins fails to meet her burden of proving a *Cranman* exception, and the non-shooting officers are therefore immune under Alabama law. *See* Ala. Code § 6-5-338(a).

2. Failure to state a claim: Even if the non-shooting officers were not immune, the court would still dismiss Count VI because Perkins fails to plead facts that establish liability under Alabama's Wrongful Death statute.

Causation is an essential element in a wrongful death action. *See* Ala. Code §6-5-410 (noting that a party must show that the "wrongful act, omission, or negligence of any person…caused" the death of the testator or intestate).

The Alabama Supreme Court has stated that "the proximate cause of a negligent injury is established where an injury is the natural and probable consequence of the negligent act or omission (or a direct wrongful act) which an ordinary prudent person ought reasonably to foresee would result in injury." *Peevy v. Ala. Power Co.*, 393 So. 2d 971, 973 (Ala. 1981). "Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence should have been anticipated." *Lands v. Ward*, 349 So. 3d 219, 226 (Ala. 2021).

Again, in Count VI, Mrs. Perkins pleads four acts that she says proximately caused her husband's death: (1) failure to announce the officers' presence, (2) failure to de-escalate, (3) failure to prevent Officer Marquette from firing his weapon, and (4) failure to warn Perkins that Officer Marquette intended to shoot him. (Doc. 1, ¶¶ 62-63 (cleaned up)). The court can summarily dispose of the final three because, as explained throughout, Perkins pleads that Marquette gave no time between his warning and his shots—making it factually impossible for the non-shooting officers to warn Perkins that he would be shot or to de-escalate the situation and stop Marquette from shooting Perkins. Again, Perkins doesn't even allege that the non-shooting officers saw or heard the brief interaction between Marquette and Perkins.

As for the failure to announce their arrival, the court finds that the pleaded facts do not link the failure to announce to the shooting. Under Alabama law, "the proximate cause of a negligent injury is established where an injury is the natural and probable consequence of the negligent act or omission (or a direct wrongful act) which an ordinary prudent person ought reasonably to foresee would result in injury." *Peevy*, 393 So. 2d at 973. Perkins pleads no facts that would establish that the failure to tell Perkins that police were present would naturally or probably result in one of the officers shooting Perkins. Some event or events had to occur in between to cause Marquette to fire his weapon, and those events broke the causal chain.

Accordingly, the court finds that Mrs. Perkins fails to plead facts that would establish any act of the non-shooting officers proximately caused her husband's death. The court will thus **grant** the non-shooting officers' motion to dismiss Count VI *without* prejudice, meaning that Perkins will get one chance to replead this count if she chooses.

**Count VI: Wrongful Death (City of Decatur)**

Also in Count VI, Perkins pleads that the City is vicariously liable for the acts of the non-shooting officers. As explained in the last section, Ala. Code § 6-5-338(a) provides the non-shooting officers with immunity from liability under Count VI. And as explained in the section about Count V, if a peace officer gets immunity under subsection (a), then his governmental employer gets vicarious immunity under subsection (b). *See City of Bayou La Batre v. Robinson*, 785 So.2d 1128, 1131 (Ala. 2000); *Ex parte City of Gadsden,* 781 So.2d 936, 940 (Ala. 2000); *Borders v. City of Huntsville*, 875 So.2d 1168, 1183 (Ala. 2003). Because the court granted each non-shooting officer's claim of peace officer immunity on Count VI, the court must also grant the City's claim of vicarious immunity on the same count. The court thus **grants** the City's motion to dismiss Count VI *without* prejudice, meaning that the court will give Perkins one chance to replead the claim to make it viable.

CONCLUSION

For these reasons, the court **GRANTS** the Motions to Dismiss filed by Mukkadam, Williams, and Summers (doc. 15) and the City of Decatur (doc. 18). The court **GRANTS IN PART** and **DENIES IN PART** Marquette's Motion to Dismiss (doc. 45).

All dismissals are without prejudice, meaning that the court will give Perkins one chance to replead her complaint to address the issues outlined in this and future opinions after the court rules on the pending motions to compel arbitration. Once the court enters a schedule for amending Perkins' complaint, the failure to timely amend the complaint, or to replead a claim in a viable manner, will result in the dismissal of Perkins' claim(s) with prejudice.

**DONE** and **ORDERED** on August 6, 2024.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE