FILED

2026 Mar-27  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**CATRELA PERKINS,**
*as administrator of the Estate of*
*Stephen Clay Perkins,*
  Plaintiff,

**v.**

**CITY OF DECATUR, *et al*.,**
  Defendants.

**Case No. 5:23-cv-1685-CLM**

## MEMORANDUM OPINION

Decatur police officer Bailey Marquette shot and killed Stephen Perkins outside his home as a towing company tried to repossess Perkins' truck. Perkins' widow, Catrela, as the administrator of Perkins' estate, sues many individuals and entities she claims contributed to Perkins' death. These defendants include:

- *The shooting officer*: Bailey Marquette;
- *The non-shooting officers*: Christopher Mukkadam, Joey Williams, and Vance Summers;
- *The towing company defendants:* Allstar Recovery, LLC, Richie Brady, and Caleb Combs;
- *Pentagon Federal Credit Union;* and
- *The City of Decatur*

Nearly all defendants moved to dismiss Perkins' original complaint. On August 6, 2024, the court entered an opinion granting in part and denying in part Marquette's motion to dismiss and granting the City's and non-shooting officer's motions to dismiss.[1] (*See* docs. 74, 75). But the court gave Perkins one chance to replead the dismissed claims. Perkins

---

[1] The towing company defendants also moved to dismiss Perkins' original complaint, but the court deferred ruling on that motion because the towing company defendants moved to compel arbitration.

1

amended her complaint (doc. 86). And now, Officer Marquette, the non-shooting officers, and the City move, once again, to dismiss Perkins' claims. (*See* docs. 89, 92, 95).

For the reasons stated within, the court **GRANTS IN PART** and **DENIES IN PART** Officer Marquette's motion, **GRANTS** the non-shooting officers' motion, and **GRANTS** the City's motion.

## BACKGROUND

As with Perkins' original complaint, the court states the facts as Perkins pleads them and assumes all of her alleged facts are true. *See* Fed. R. Civ. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### A.    The Repossession and Shooting

Pentagon Federal Credit Union collects debt. Pentagon hired Allstar Recovery to repossess Stephen Perkins' truck.

Combs works for Allstar Recovery. In September 2023, Combs drove to Perkins' house in Decatur to repossess Perkins' truck. Perkins was home at the time, and he objected to Combs taking his truck.

Combs left but later returned with Brady, a fellow Allstar Recovery employee, and four Decatur Police officers: Marquette, Mukkadam, Summers, and Williams. Perkins alleges that the officers "planned and agreed … to triangulate around" Perkins' home. (Doc. 86, p. 10). Following that plan, the officers concealed themselves outside Perkins' home while Combs and Brady tried to tow Perkins' truck.

Perkins emerged from his house to confront Combs and Brady. Perkins once again objected to the pair taking his truck. Then, Officer Marquette appeared, identified himself as a police officer, and ordered Perkins to the ground. Officer Marquette drew his service weapon and fired multiple gunshots, killing Perkins.

### B.    Procedural History

Perkins' wife, Catrela, and his daughter, A.P., in their individual capacities, sued the four officers, the towing company defendants, Pentagon Federal Credit Union, and the City. The court granted in part and denied in part Marquette's motion to dismiss the original complaint. The court also granted the non-shooting officers' and the City's motions to dismiss the original complaint. But the court gave Perkins one opportunity to replead the dismissed claims.

Catrela Perkins filed an amended complaint as the personal representative of Stephen Perkins' estate. She brings the same 8 counts as before. Five of those counts are implicated here. In Counts 1-3, Perkins brings claims under 42 U.S.C. § 1983 against Marquette, the non-shooting officers, and the City. In Counts 5-6, Perkins pleads wrongful death claims under Alabama law against the same defendants. Although her claims remain the same, Perkins amended her factual allegations to cure pleading deficiencies identified in the court's first memorandum opinion.

As before, Officer Marquette, the non-shooting officers, and the City move to dismiss Perkins' claims. (*See* docs. 89, 92, 95). So the court must once again analyze Perkins' complaint to determine what claims proceed to discovery.

### LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but does demand more than "an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

Rule 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. 12(b)(6). "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A complaint states a facially plausible claim for relief when the plaintiff pleads facts that permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## DISCUSSION

Like before, the court addresses the five counts against the four officers and the City in the order Perkins pleaded them.

### A.    Count 1: Section 1983 (Officer Marquette)

Perkins and her daughter, A.P., originally claimed that Officer Marquette used excessive force when he shot Perkins outside their home and that § 1983 provides the remedy. In response, Officer Marquette argued that (1) qualified immunity shields him from the claim, (2) the estate's claim is limited to punitive damages under Alabama law, and (3) even if he is not immune, he can be sued only by Mr. Perkins' estate—not his wife and child personally. In its first memorandum opinion, the court denied Officer Marquette's motion to dismiss Count 1, deferred ruling on his punitive damages argument, and agreed that only Mr. Perkins' estate could bring the claim. (*See* doc. 74, pp. 3-5).

The court's analysis of Count 1 hasn't changed. The court adopts and re-applies its previous analysis of qualified immunity here. (*Id.*, pp. 4-5). In short, Officer Marquette is not entitled to qualified immunity because, based on Perkins' pleaded facts, Mr. Perkins was neither trying to leave the scene nor posing a serious threat of physical harm to others when Officer Marquette used deadly force. (*Id.*).

Moreover, the court need not decide whether Alabama law limits Perkins' relief to punitive damages and reserves ruling on the scope of the relief for future motions. Finally, Mrs. Perkins and A.P. dropped their personal claims for relief. Mrs. Perkins, as the personal representative of her husband's estate, is the only named plaintiff in the amended complaint.

4

So, to sum up, Mrs. Perkins, in her role as the personal representative of husbands' estate, has pleaded a § 1983 claim against Officer Marquette that could entitle the estate to relief. As a result, the court **DENIES** Officer Marquette's motion to dismiss Count 1.

## B.    Count 2: Section 1983 (Non-shooting Officers)

In Count 2, Perkins brings a § 1983 claim against the non-shooting officers for failing to intervene and prevent Officer Marquette's use of excessive force. In its first memorandum opinion, the court reasoned that the non-shooting officers were entitled to qualified immunity because, based on Perkins' originally pleaded facts, the officers didn't have a chance to intervene once they knew Officer Marquette might use excessive or deadly force. (*See* doc. 74, pp. 6-8). Perkins amended her factual allegations, so the court must determine whether Perkins has stated a claim. But before doing so, the court provides a quick refresher on the law.

1. <u>The law</u>: The court applies a two-part test for qualified immunity. First, the officer must show "that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). If the officer meets this first burden, then the plaintiff must show that the officer violated a constitutional right that was clearly established at the time of the wrongful act. *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

Perkins doesn't contest that the non-shooting officers were acting within the scope of their duties as police officers the night Officer Marquette shot her husband. And when Officer Marquette shot Perkins, it was clearly established that the Fourth Amendment required the non-shooting officers "to intervene in the use of excessive force when they have the ability to intervene." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021).

2. <u>Discussion</u>: As noted above, Perkins amended her factual allegations for Count 2. Now, she pleads the events like this:

35. After Stephen Clay Perkins exited his home, Defendant Bailey Marquette drew his service weapon and pointed it at Plaintiff's decedent. At the time Defendant Marquette drew his service weapon and pointed it at Plaintiff's decedent, Plaintiff's decedent did not pose a threat of death or great bodily harm to any person present.

36. Defendants Mukkadam, Williams, and Summers saw Defendant Marquette draw his service weapon and point it at Plaintiff's decedent when Plaintiff's decedent did not pose a threat of death or great bodily harm to any person present.

37. At no time following Defendant Marquette drawing his service weapon and pointing it at Plaintiff's decedent did Defendants Mukkadam, Williams, or Summers attempt to prevent Defendant Marquette from taking such actions. At no time following Defendant Marquette drawing his service weapon and pointing it at Plaintiff's decedent did Defendants Mukkadam, Williams, or Summers identify themselves as police officers or attempt to warn Plaintiff's decedent that deadly force was threatened against him.

38. After Stephen Clay Perkins objected to Combs' and/or Brady's repossession, Defendant Bailey Marquette identified himself as a police officer and ordered Plaintiff's decedent to the ground.

39. At no time following Defendant Marquette ordering Plaintiff's decedent to the ground did Defendants Mukkadam, Williams, or Summers attempt to prevent Defendant Marquette from pointing his service weapon at Plaintiff's decedent. At no time following Defendant Marquette ordering Plaintiff's decedent to the ground did Defendant Mukkadam, Williams, or Summers identify

> themselves as police officers or attempt to warn Plaintiff's decedent that deadly forced was threatened against him.

(Doc. 86, ¶¶ 35-39) (cleaned up). Perkins contends that her amended complaint identifies "several times" the non-shooting officers could have intervened and stopped Officer Marquette's use of excessive force. First, she says the officers could have "initially identified themselves as police officers" when they arrived at Perkins' home, thereby preventing Officer Marquette's eventual use of excessive force. (*See* doc. 97, p. 6). Second, she argues that the non-shooting officers could have intervened once they saw Officer Marquette draw his service weapon. (*See id.*, p. 7). And third, she argues that the non-shooting officers could have intervened once Officer Marquette identified himself and ordered Perkins to the ground. (*See id.*).

Even considering Perkins' amended facts, a problem remains: Perkins pleads no facts that would establish that the non-shooting officers knew or should have known that Officer Marquette would shoot Perkins *before* Officer Marquette shot Perkins. And Perkins has not pointed to any case from the Eleventh Circuit or elsewhere that holds an officer can be liable for failing to announce himself or de-escalate an encounter when a fellow officer draws their service weapon.

In fact, precedent suggests that liability does not attach in the latter circumstance. In *Riley v. Newton*, for example, the Eleventh Circuit held that a supervising officer was not liable for failing to intervene when a fellow officer shot a suspect because there was no "indication of the prospective use of excessive force—none occurred until [the shooting officer's] weapon fired." *See* 94 F.3d 632, 635 (11th Cir. 1996); *see also Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (holding that an officer wasn't liable for failing to intervene when a fellow officer punched a suspect because the officer could not "have anticipated and then stopped" the punch).

To be sure, Perkins pleads that the non-shooting officers saw Officer Marquette "draw his service weapon and point it" at her husband before Marquette identified himself, shouted commands, and shot. (*See* doc. 86,

7

¶ 36). So the non-shooting officers *might* have been aware, for a short time, that Officer Marquette *might* shoot Perkins. But even accepting Perkins' allegations as true, Perkins has not shown that it was clearly established law, at the time of the shooting, that the non-shooting officers had a duty to preemptively identify themselves or de-escalate the encounter when they saw Officer Marquette draw and point his gun. And since those duties weren't clearly established at the time of this incident, the non-shooting officers are entitled to qualified immunity.

The court will thus **grant** the non-shooting officers' motion to dismiss Count 2 based on qualified immunity.

## C.    Count 3: Section 1983 (City of Decatur)

Perkins next brings a § 1983 claim against the City of Decatur. In its first memorandum opinion, the court dismissed this claim because Perkins failed to link a City policy or custom to Officer Marquette's use of deadly force. Perkins repleads the claim, so the court will again summarize the law before applying it to Perkins' fresh allegations.

1. The law: Municipalities are only liable for their employees' acts under § 1983 if the employee was executing an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). So "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to those constitutional rights; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Just as before, the court found in Count 1 that Perkins pleads sufficient facts to prove that Officer Marquette violated her husband's constitutional rights. So to attach liability to the City, Perkins must plead facts that would show the City had a custom or policy that was deliberately indifferent to Mr. Perkins' right to be free from excessive force and that custom or policy caused Officer Marquette to shoot Perkins.

8

2. <u>Discussion</u>: Perkins pleads the following custom or policy in her amended complaint:

> 10. On and prior to September 29, 2023, Defendant City of Decatur, Alabama employed a policy, procedure, or custom, of assessing Decatur police officers' performance. This policy, procedure, or custom was commonly referred to as the "STATS" system.
>
> 11. Under this policy, practice, or custom, Defendant City of Decatur, Alabama kept statistics, or "stats" regarding each of its police officers' particular police actions taken or performed by each individual officer.
>
> 12. Under the "STATS" system, different types of citizen interactions taken by City of Decatur, Alabama police officers were assigned different numerical values; tickets to citizens were systematically given low numerical values where, in contrast, citizen arrests were given high numerical values. Each officers' statistics, or "STATS" were kept and utilized by Defendant City of Decatur, Alabama in various employment decisions related to its police officers, including pay, promotion, and assignment decisions. The officers with higher total "STATS" were given preferential treatment in pay, promotion, and assignment decisions over officers with lower total "STATS."
>
> 13. The aforementioned "STATS" system encouraged City of Decatur, Alabama police officers to attempt and make arrests of citizens rather [than] use lower-level police tactics like issuing a ticket to resolve citizen interactions with police. The "STATS" system incentivized City of Decatur, Alabama police officers to escalate citizen interactions to the point of effecting a forcible arrest, rather than de-escalate citizen interactions and resolving matters without effecting an arrest and/or deploying the use of

> force. As a direct and proximate result of this system, City of Decatur, Alabama police officers were encouraged to and did use excessive and unconstitutional force against citizens during arrests and other citizen encounters.
>
> 14. A further effect of this system was to encourage City of Decatur, Alabama police officers to use force during their citizen interactions. As a direct and proximate result of this system, City of Decatur, Alabama police officers were encouraged to, and did use, excessive and unconstitutional force against citizens during arrests and other citizen encounters.
>
> 15. At all times relevant, Defendant City of Decatur, Alabama knew that the "STATS" system resulted in its officers using excessive and unconstitutional force against citizens, including the use of deadly force, under circumstances where such force was not justified.

(Doc. 86, ¶¶ 10-15) (cleaned up). Perkins then pleads in Count 3 that her husband's death resulted from the "STATS" system:

> 76. On September 29, 2023, Defendants Marquette, Mukkadam, Williams, and Summers were acting pursuant to the City of Decatur, Alabama policy, procedure, and custom in that they attempted to escalate the confrontation with Plaintiff's decedent to the point of having to seize and arrest Plaintiff's decedent, rather than resolve the confrontation peacefully and without force, which would have resulted in fewer "stats" associated with the interaction with Plaintiff's decedent.
>
> 77. On September 29, 2023, Defendants Mukkadam, Williams, and Summers were acting pursuant to the City of Decatur, Alabama policy, procedure, and custom in that they failed to intervene in Defendant Marquette's

10

confrontation with Plaintiff's decedent and allowed the confrontation to escalate to the point of having to seize and arrest Plaintiff's decedent, rather than resolve the confrontation peacefully and without force, which would have resulted in fewer "stats" associated with the interaction with Plaintiff's decedent.

78. The conduct of Defendants Marquette, Mukkadam, Williams, and Summers was performed pursuant to the City of Decatur, Alabama policy, procedure, and custom in that Defendants' actions were motivated by the desire to increase their "stats" by using force, including deadly force, to effect a seizure and arrest of Plaintiff's decedent rather than resolve the confrontation without action taken against Plaintiff's decedent.

79. As a direct and proximate result of the unconstitutional policy of Defendant City of Decatur, Alabama, Stephen Clay Perkins was deprived of his federally secured constitutional rights in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

80. As a direct and proximate result of the unconstitutional policy of Defendant City of Decatur, Alabama, Stephen Clay Perkins died.

(*Id.* ¶¶ 76-80) (cleaned up).

Perkins' new factual allegations, like her old ones, fail to connect Officer Marquette's actions with the City's policy. Perkins claims the "STATS" system motivated Officer Marquette to shoot Mr. Perkins, but she offers no clear explanation why. She does not allege that using deadly force earns additional "stats," or that the City has ever rewarded officers for it. Instead, she asserts only that officers receive higher "stats" for making arrests. Even if true, and even if Officer Marquette sought to boost his "stats" by arresting Mr. Perkins, that still does not explain how the

11

"STATS" system lead him to use deadly force. Put simply, arrests don't equal deadly force, so the "STATS" system doesn't connect to Officer Marquette's actions.

Perkins fails to plead sufficient facts that would link the City's "STATS" system to Marquette shooting Perkins. So the court will **grant** the City's motion to dismiss Count III for failure to state a plausible claim for relief.

**D.     Count 5: Wrongful Death (Officer Marquette)**

In Count 5, Perkins sues Officer Marquette and the City of Decatur for wrongful death under Ala. Code § 6-5-410. Like before, Officer Marquette contends that state-agent immunity and peace officer immunity shield him from Perkins' claim.

1. <u>Immunity</u>: Marquette pleads two types of immunity: (a) state-agent immunity, as defined by state common law, and (b) peace officer immunity, under Ala. Code § 6-5-338(a). The same two-part test governs state-agent immunity and peace officer immunity. First, the officer has the burden of proving that he (1) was a peace officer, (2) performing his law-enforcement duties at the time of the incident, and (3) exercising judgment and discretion. *Ex parte City of Montgomery*, 402 So. 3d 810, 813 (Ala. 2024) (citing *Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017)). Perkins' pleaded facts satisfy these elements, so Officer Marquette meets his burden.

Second, the burden shifts to the plaintiff to defeat the officer's immunity by proving at least one of the two "*Cranman* exceptions":

> In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of

> regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Montgomery*, 402 So. 3d at 813-14 (quoting *Ex parte City of Montgomery*, 272 So. 3d 155, 160 (Ala. 2018)). The court applies this standard below to Perkins' allegations in Count 5.

2. <u>Announcement-related claim</u>: Perkins repleads her allegation in Count 5 that Officer Marquette's failure to announce his presence when he arrived at Perkins' home proximately caused Perkins' death:

> 92. Notwithstanding said duty, Defendant City of Decatur, Alabama, by and through its authorized agent, servant, and/or employee Bailey Marquette, committed one or more of the following neglectful, careless, and/or unskilled acts and/or omissions
>
> (a) Negligently, carelessly, and unskillfully failed to announce his office when he arrived at Plaintiff's decedent's home …
>
> 94. As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Stephen Clay Perkins died.

(Doc. 86, ¶¶ 92-94) (cleaned up). In the first memorandum opinion, the court found that Officer Marquette was immune from liability for this claim because Perkins couldn't meet either *Cranman* exception. Perkins still does not point to any federal case or statute that requires a law enforcement officer to announce his presence when arriving at a home to monitor a repossession, so Marquette's immunity can't be stripped by the first *Cranman* exception.

Perkins also failed to meet the second *Cranman* exception in her initial pleading because she only alleged that Officer Marquette acted "neglectfully, careless, and unskillfully" when he failed to announce. (*See* doc. 74, p. 13). In the amended complaint, Perkins adds the following paragraph to meet the second *Cranman* exception:

> 93. The actions of Defendant Bailey Marquette, in refusing to initially identify himself as a police officer, … were done willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law.

(Doc. 86, ¶ 93) (cleaned up). Perkins says the new language "addresses" the court's earlier ruling that found Perkins failed to meet the second *Cranman* exception. (*See* doc. 97, p. 15). But this sentence is a mere legal conclusion, not new facts.

With that said, the court has always agreed that Perkins pleads enough facts in her complaints to show that the officers 'intentionally' or 'willfully' chose not to identify themselves as police officers upon arrival. Indeed, Perkins alleges elsewhere that the officers "concealed themselves around the perimeter" of Perkins' home and failed to use "police strobe and/or vehicle lighting" when arriving at Perkins' home. (*See* doc. 86, ¶¶ 31, 44). But Marquette and his fellow officers 'willfully' acted in several ways that night: they willfully chose to work as police officers, to proceed to Perkins' house to monitor the repossession, and to carry firearms. Marquette's failure to announce did not cause Perkin's death, any more than these other 'willful' decisions caused Perkins's death. Under Alabama law, "a defendant's acts may subject him or her to liability for an intentional tort if the acts 'were substantial factors in bringing about the plaintiff's harm.'" *Flickinger v. King*, 2025 WL 2424426, at *10 (Ala. Aug. 22, 2025) (quoting *Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*, 390 So. 3d 601, 610 (Ala. 1980)). While this standard permits liability based on "remote causation" in cases of intentional conduct, it still requires a "sufficient relationship" between the act and the injury.

*See King*, 2025 WL 2424426, at \*10 (quoting *Shades Ridge*, 390 So. 2d at 609-10).

*King* illustrates the "sufficient relationship" requirement. There, King sent Flickinger's social media posts to his employer, which led to Flickinger's termination. *King*, 2025 WL 2424426, at \*8-10. Flickinger sued King for tortious interference, an intentional tort. *Id.* The Alabama Supreme Court found the needed sufficient relationship between King's act of sending the posts and Flickinger's termination because (a) the employer was not considering termination beforehand and (b) began doing so immediately after King sent the posts. *Id.* at \*10. Or from King's point of view, King knew that sending the posts to his employer could start a chain of events that might result in his employer disciplining Flickering.

No such relationship exists here. Again, Marquette and the other officers took several willful actions the night of Perkins' death: they agreed to assist with the repossession; they traveled to Perkins' home; and, they armed themselves. But the officers had no reason to think that these acts would become a "substantial factor" in Marquette shooting Perkins. Nor were they a substantial factor. Those factors began—and the situation changed—when Perkins exited his house and confronted Combs. To hold otherwise would allow the second *Cranman* exception to strip immunity any time an officer 'willfully' came to the scene of an incident.

Perkins' wrongful death claim based on Officer Marquette's failure to announce therefore fails as a matter of law. So the court will **grant** Officer Marquette's motion to dismiss the claim pleaded in ¶ 92(a).

3. <u>Shooting-related claim</u>: The rest of Perkins' allegation focus on the shooting:

> 92. Notwithstanding said duty, Defendants City of Decatur, Alabama, by and through its authorized agent, servant, and/or employee Bailey Marquette, committed one or more of the following neglectful, careless, and/or unskilled acts and/or omissions

(b) Negligently, carelessly, and unskillfully failed to de-escalate the citizen interactions with Stephen Clay Perkins when Defendant knew or should have known Perkins did not present a threat of injury to himself or others;

(c) Negligently, carelessly, and unskillfully failed to allow Stephen Clay Perkins an opportunity to respond to Defendant's verbal commands prior to discharging his firearm at Plaintiff's decedent;

(d) Neglectfully, carelessly, and unskillfully discharged his firearm at Stephen Clay Perkins when Perkins did not pose a threat of death or serious bodily injury to others;

(e) Negligently, carelessly, and unskillfully failed to warn Stephen Clay Perkins that he intended to use deadly force prior to discharging his firearm at Perkins.

94. As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Stephen Clay Perkins died.

(Doc. 86, ¶¶ 92, 94). The court previously found that Perkins met the first *Cranman* exception for these allegations because Officer Marquette may have violated Perkins' constitutional rights. (*See* doc. 74, p. 14). That finding hasn't changed. Because state-agent immunity does not apply if the state agent violated a federal constitutional right under the first *Cranman* exception, Marquette is not entitled to state-agent or peace officer immunity on Count 5. *See Taylor v. Hughes*, 920 F.3d 729, 734-35 (11th Cir. 2019) ("state-agent immunity do[es] not immunize the guards from liability under state law if they violated Almus's constitutional rights."). So the court will **deny** Officer Marquette's motion to dismiss the claim pleaded in ¶ 92(b)-(e).

4. Punitives-only claim: Officer Marquette also argues that Perkins' wrongful death claim is limited to punitive damages. Before amending her complaint, Perkins agreed that only punitive damages could be awarded.

16

(*See* doc. 58, p. 8, n.3). But in her amended complaint, Perkins seeks damages generally. (*See* doc. 86, ¶¶ 94-95).

It's well settled law in Alabama that only punitive damages may be awarded on a wrongful death claim. *See Campbell v. Williams*, 638 So. 2d 804 (Ala. 1994), *cert. denied*, 513 U.S. 868 (1994). So the court will limit any recovery against Marquette under Count 5 to punitive damages.

### E.      Count 5: Wrongful Death (City of Decatur)

Perkins also alleges in Count 5 that the City is liable for Officer Marquette's actions. In the first memorandum opinion, the court dismissed this claim because the City had immunity under Ala. Code § 6-5-338(b) and § 11-47-190. (*See* doc. 74, pp. 15-16). Perkins repleads her claim, and the City again argues it's immune.

1. Section 6-5-338(b) & Failure-to-announce claim: As discussed in the court's previous opinion, § 6-5-338(b) extends §  6-5-338(a)'s peace officer immunity to "governmental units or agencies authorized to appoint peace officers." (*See* doc. 74, p. 15). So if a peace officer (like Marquette) gets immunity under subsection (a), then his governmental employer gets vicarious immunity under subsection (b).

The court determined above that, while Officer Marquette willfully failed to announce himself, Perkins' claim based on that act fails because Marquette's failure to announce did not cause Mr. Perkins' death. So the City cannot be held vicariously liable for a claim against Marquette based on failure to announce.

With that said, the court found that § 6-5-338(a) does not immunize Marquette from liability stemming from his use of lethal force, meaning that § 6-5-338(b) cannot immunize the City from liability for acts stemming from the same allegation. The City contends that § 11-47-190 shields it from Perkins' shooting-related claim, so that's where the court turns next.

2. <u>Section 11-47-190 & Shooting-related claim</u>: Section 11-47-190 states that "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer or employee of the municipality[.]" Section 11-47-190 thus gives cities immunity when their employees act intentionally and withholds it when they act negligently. *See, e.g.*, *Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010) ("In sum, under § 11-47-190, a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees.").

In its first memorandum opinion, the court assumed Perkins' pleaded facts as true and determined that the City was entitled to immunity under § 11-47-190 because Marquette didn't shoot Perkins out of "neglect, carelessness, or unskillfulness"—he did it intentionally. (*See* doc. 74, p. 16). Even though Perkins amended her complaint, the court's prior conclusion still holds true. Perkins still alleges that Officer Marquette used deadly force against Mr. Perkins even though he "did not pose a threat of death or great bodily harm" to Officer Marquette or others. (*See* doc. 86, ¶ 49). And Perkins still alleges this in Count 1:

> 53. The conduct of Defendant Bailey Marquette was done intentionally and willfully, and exhibited a flagrant disregard for Stephen Clay Perkins' federally secured constitutional rights …

(*Id.* ¶ 53) (cleaned up, highlight added). Assuming Perkins' pleaded facts as true, Officer Marquette intentionally shot Perkins. And because Marquette's intent is still clear from the face of the complaint, the City is entitled to immunity under Ala. Code § 11-47-190. *See Brown*, 608 F.3d at 743 (affirming a district court's grant of immunity to a city under § 11-47-160 because the plaintiff's complaint showed that the officer acted intentionally). The court will thus **grant** the City's motion to dismiss Count 5.

**F.     Count 6: Wrongful Death (Non-shooting Officers)**

Perkins again alleges that the three non-shooting officers are liable under Alabama's wrongful death statute. And the officers again argue that (1) they are immune under state law and (2) Perkins fails to state a claim that entitles her to relief.

1. <u>Immunity</u>: The non-shooting officers claim state-agent immunity and peace officer immunity under Ala. Code § 6-5-338(a). As explained, the test for both immunity types is the same.

First, each officer has the burden of proving that he (1) was a peace officer, (2) performing his law enforcement duties at the time of the incident, and (3) exercising judgment and discretion. *Montgomery*, 402 So. 3d at 813-14 (citing *Homewood*, 231 So. 3d at 1087). Perkins' pleaded facts satisfy these elements for each officer, so the non-shooting officers meet their initial burden.

Second, the burden shifts to Perkins to prove at least one of the two "*Cranman* exceptions":

> In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Montgomery*, 402 So. 3d at 813-14 (quoting *Montgomery*, 272 So. 3d at 160). Because the court found in Count 2 that Perkins fails to adequately

plead that the non-shooting officers violated a clearly established federal right, Perkins cannot meet the first *Cranman* exception.

So Perkins must satisfy the second *Cranman* exception by pleading facts that would show the officers "act[ed] willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." *Id.* Just like for her amended wrongful death claim against Officer Marquette, Perkins added a conclusory allegation for her claim against the non-shooting officers:

> 102. The actions of Defendants Mukkadam, Williams, and Summers, in refusing to initially identify themselves as police officers, in concealing themselves near Plaintiff's decedent's home, in failing to prevent Defendant Marquette from drawing his service weapon and pointing it at Plaintiff's decedent under circumstances where Plaintiff's decedent presented no threat of death or great bodily harm to anyone, and failing to warn Plaintiff's decedent that deadly force was threatened against him, was done willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.

(Doc. 86, ¶ 102) (cleaned up, highlight added). Perkins pleads no facts that would show the non-shooting officers acted "willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law" when they failed to de-escalate Perkins' encounter with Officer Marquette or otherwise warn Perkins. The only "willful[]" acts taken by the non-shooting officers were (a) failing to identify themselves and (b) concealing themselves around Perkins' home. But just because those acts were willful doesn't mean that they connect to the shooting. Indeed, as already discussed in the court's analysis of Perkins' wrongful death claim against Officer Marquette (*see* part D.2), Perkins pleads no facts showing that the non-shooting officers' failure to identify themselves as police was a "substantial factor" in causing Perkins'

death. So Perkins fails to state a claim for wrongful death against the non-shooting officers based on failure to announce.

In sum, the court finds that the non-shooting officers are immune from Perkins' wrongful death claim based on failure to de-escalate or intervene, and Perkins fails to state a claim based on failure to announce. The court will thus **grant** the non-shooting officers' motion to dismiss Count 6.

## G.    Count 6: Wrongful Death (City of Decatur)

Perkins' last wrongful death claim in Count 6 seeks to hold the City vicariously liable for the acts of the non-shooting officers. As explained in the last section, Perkins' wrongful death claim against the non-shooting officers fails. So the City cannot be held vicariously liable based on the non-shooting officers' actions. The court thus **grants** the City's motion to dismiss Count 6.

## CONCLUSION

For these reasons, the court **GRANTS IN PART** and **DENIES IN PART** Officer Marquette's motion to dismiss (doc. 89) and **GRANTS** the non-shooting officers' and City of Decatur's motions to dismiss (docs. 92, 95). Because Perkins has already repleaded once, these dismissals are **WITH PREJUDICE**. And because the court is dismissing all of Perkins' claims against the non-shooting officers and the City, the court **DIRECTS** the Clerk of Court to remove them as parties. The court will enter a separate order carrying out this opinion.

**DONE** and **ORDERED** on March 27, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

21